# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | | |
|---|---|---|
| **RODNEY J. TOLLIVER** | : | **DOCKET NO. 15-cv-2828** |
| **D.O.C. # 194905** | | |
| | | |
| **VERSUS** | : | **JUDGE WALTER** |
| | | |
| **N. BURL CAIN** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is a pro se application for a writ of habeas corpus pursuant to 28 U.S.C § 2254, filed by Rodney Tolliver ("petitioner") [docs. 1, 4]. The petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections.[1] He is currently incarcerated at the Louisiana State Penitentiary in Angola Louisiana. N. Burl Cain, former warden of the Louisiana State Penitentiary, opposes the application. Doc. 15.

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] By separate proceeding the petitioner also sought relief in a motion to correct an illegal sentence pursuant to *Miller v. Alabama*, 132 S.Ct. 2455 (2012), based on the fact that he was under eighteen at the time he committed his crime and was sentenced to a mandatory term of life imprisonment. Following its decision in *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016), making *Miller* retroactively applicable on collateral review, the Supreme Court remanded the case to the Louisiana Supreme Court for reconsideration. *Tolliver v. Louisiana*, 136 S.Ct. 1354 (2016). On October 28, 2016, the Louisiana Supreme Court vacated the petitioner's sentence and remanded the case to the trial court for "further proceedings consistent with the views expressed in [*Montgomery*] and for resentencing . . . ." *State ex rel. Tolliver v. State*, 202 So.3d 991 (La. 2016). As of the date of this opinion, we have not received any indication that the petitioner has been released from custody.

# I.
## BACKGROUND

### A. Conviction

On February 19, 2004, the petitioner was indicted in the Fifteenth Judicial District, Lafayette Parish, Louisiana, on one count of first degree murder. Doc. 15, att. 7, p. 22. The charge related to the killing of Yolande Theriot on or about April 14, 1985.[2] *Id.* The court subsequently granted the state's motion to amend the indictment to a charge of second degree murder, and the petitioner entered a plea of not guilty. *Id.* at 47–49; doc. 15, att. 6, p. 79. The case proceeded to trial and the petitioner was convicted of the charged offense by unanimous jury verdict on April 24, 2007. Doc. 15, att. 7, p. 18. He was then sentenced to a term of life imprisonment on May 7, 2007. *Id.* at 20. On the same date the court also conducted contempt proceedings against defense counsel, relating to his conduct at trial as discussed *infra*, and thereafter sentenced defense counsel to a term of twenty-four hours' incarceration in the parish jail. *Id.*

### B. Direct Appeal

The petitioner appealed the verdict to the Louisiana Third Circuit Court of Appeal, raising the following assignments of error:

1. The trial court failed to follow the proper procedure following the defense's motion to recuse.
2. The trial court erred in denying the defense's requests for a continuance based on the unavailability of crucial witnesses.

---

[2] The victim was a seventy-year-old woman who lived alone. *State v. Tolliver*, 11 So.3d 584, 588 (La. Ct. App. 3d Cir. 2009). On the evening of the murder she had gone to eat supper with friends. *Id.* The victim's daughter, Barbara Theriot Obermier, who lived next door, testified that she saw her mother's porch light was off later that night and assumed that she had made it home safely. *Id.* at 588. However, the next day she discovered her mother's body inside the ransacked house. *Id.* at 588–89. Joseph Delhomme, the victim's grandson and Obermier's son, was arrested for the murder based on circumstantial evidence and brought to trial in 1988, but the proceeding resulted in a mistrial and the charges were dropped. *Id.* at 589, 590–91.

In 2003, a detective from the Lafayette Police department began testing fingerprints from old case files. *Id.* at 592. A fingerprint from the Yolande Theriot file yielded a match to the petitioner, and then DNA testing of remaining physical evidence, including slides of swabs taken from the victim's mouth and cutouts from a towel found at the crime scene, also matched the petitioner. *Id.* at 592–94. The petitioner was sixteen years old at the time of the murder and was the nephew of a man who lived in a house on the victim's property. *Id.* at 595.

3. The trial court erred in failing to suppress evidence on the basis that the defense had no opportunity to examine and test evidence that had been destroyed.
4. There was insufficient evidence to support a conviction of second degree murder.

*State v. Tolliver*, 11 So.3d 584, 587 (La. Ct. App. 3d Cir. 2009). Finding no merit to the above claims, the Third Circuit affirmed the conviction. *Id.* at 587–613. The petitioner sought review in the Louisiana Supreme Court, which denied same on February 24, 2010. *State v. Tolliver*, 28 So.3d 269 (La. 2010). He did not file a petition for certiorari in the United States Supreme Court. Doc. 1, p. 2.

### C. State Collateral Review

The petitioner then filed an application for post-conviction relief in the trial court on December 29, 2010.[3] Doc. 15, att. 27, pp. 1–26. There he raised the following claims for relief:

1. Trial counsel was ineffective for failing to procure witnesses whom he told the court were crucial for the defense.
2. Trial counsel was ineffective for failing to secure expert testimony to aid the defense at trial.
3. Trial counsel was ineffective for failing to scientifically test samples of evidence.

*Id.* It is unclear what action was taken by the trial court after that point or when it was taken if it was but it appears the application was initially denied by the trial court.[4] *See id.* at 25. A second application for post-conviction relief was filed on May 24, 2013, wherein petitioner (1) renewed his claim from appeal that the trial court had erroneously denied the continuance and recess, (2) claimed that the trial court violated his constitutional rights by allowing inadmissible hearsay to

---

[3] The respondent treats the date of filing as January 3, 2011, when the pleading was received by the trial court. However, under the prison mailbox rule, a *pro se* prisoner's pleading is deemed filed on the date it is submitted to prison authorities to be mailed. *Stoot v. Cain*, 570 F.3d 669, 671–72 (5th Cir. 2009). Here the petitioner indicated that this pleading was submitted for mailing on December 29, 2010. Doc. 15, att. 27, p. 26. Therefore we treat the pleading as filed on that date.

[4] The petitioner contends that this application was initially denied without a hearing and that the Third Circuit then granted his writ application and remanded the matter to the trial court for an evidentiary hearing. Doc. 1, att. 1, p. 8.

be introduced in the form of an autopsy report and (3) claimed that the prosecutor and/or trial court violated his constitutional rights by releasing Castel-Lovell from her subpoena.[5] Doc. 15, att. 26, pp. 115–25.

An evidentiary hearing was conducted on April 29, 2014, relating to the ineffective assistance claims. Doc. 15, att. 26, pp. 1–69. At the conclusion of the hearing the trial court denied the application. *Id.* at 67–68. The petitioner sought a writ of review in the Third Circuit, which denied same. Doc. 15, att. 28. The petitioner then sought review in the Louisiana Supreme Court, which likewise denied same on November 16, 2015. Doc. 15, att. 31.

The petitioner filed a third application for post-conviction relief in the trial court on July 16, 2014, claiming, based on allegedly newly discovered evidence, that trial counsel had received a plea offer but failed to communicate it to him. Doc. 15, att. 26, pp. 70–94. That application was denied by the trial court. *Id.* at 94. He then sought review in the Louisiana Third Circuit Court of Appeal which held that the alleged newly discovered evidence did not qualify as an exception to post-conviction relief time limits set out under Article 930.8 of the Louisiana Code of Criminal Procedure. Doc. 15, att. 2, p. 41. The Louisiana Supreme Court denied review on December 7, 2015, also finding that the matter was untimely under Article 930.8. *Id.* at 35–36.

### D. Federal Habeas Petition

The instant petition was filed on December 9, 2015. Doc. 1, p. 10. Here the petitioner raises the following claims:

1. Trial counsel was ineffective in the following respects:
   a. Failing to procure witnesses whom he told the court were crucial to the defense.
   b. Failing to secure expert testimony to aid the defense at trial.

---

[5] The petitioner dubs this pleading a "supplemental" application for post-conviction relief and appears to contend that the subsequent state court rulings relating to his 2011 application also applied to his 2013 application. Doc. 1, att. 1, p. 8. As we can find no indication that the trial court ruled on his May 2013 application, we will accept this argument and consider those claims exhausted.

       c.   Failing to scientifically test samples of evidence.

       d.   Failing to inform the petitioner that he had received a plea offer.

2.   The trial court erroneously denied a pre-trial continuance and recess in order for the defense to secure expert testimony.

3.   The trial court erred by allowing an expert witness to testify about an autopsy report when the autopsy report's author was not available for cross-examination.

4.   The trial court erroneously released a witness from a subpoena requiring her to testify for the defense.

Doc. 1, att. 1; doc. 4.

## II.
### LEGAL STANDARDS ON HABEAS REVIEW

#### A. *Timeliness*

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Rhines v. Weber*, 125 S.Ct. 1528 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the

dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B. *Procedural Default and Exhaustion of State Court Remedies*

Before proceeding to the merits of the issues raised in the petition, this court considers the doctrines of procedural default and exhaustion of state court remedies. Exhaustion and procedural default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any claims by respondent under these doctrines, in addition to conducting our own review.

#### 1. *Exhaustion of State Court Remedies*

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual

claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

## 2. Procedural Default

When a petitioner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to satisfy state procedural requirements results in forfeiture of a petitioner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter; rather, it is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default)[6] or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical"

---

[6] To serve as adequate grounds for a federally cognizable default the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for traditional procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

### C.  General Principles

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456, 471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary]

result . . . ." *Bell v. Cone*, 543 U.S. 447, 452-53 (2005), quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (internal quotations omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 546 U.S. 333, 341 (2006).

### III.
#### LEGAL ANALYSIS

As a preliminary matter this court reviews the petitioner's application for timeliness, failure to exhaust state court remedies, and procedural default. If the claim is procedurally viable, its merits are considered under the general standards set forth in Section II.C.

#### A. Timeliness

Here the petitioner's conviction became final 90 days after the judgment of the Louisiana Supreme Court, when his time for seeking review in the United States Supreme Court expired. *See* Sup. Ct. R. 13. Therefore his one year limit for filing this petition began to run on May 26, 2010. It was suspended by the filing of his application for post-conviction relief on December 29, 2010, by which time **217 days** had accrued. Without evidence to the contrary, we assume that the application was properly filed and pending in the state courts until the ruling of the Louisiana

Supreme Court denying review on November 16, 2015.[7] Therefore only an additional **23 days** accrued before the instant petition was filed, meaning a total of **240 days** have accrued against the one year limit and this matter is timely.

### B. Exhaustion of State Court Remedies and Procedural Default

The petitioner's ineffective assistance claim relating to the plea bargain offer is subject to procedural default due to the state courts' decision that it was untimely under Article 930.8. *Griffin v. Michael*, 2006 WL 3759688, *4 (W.D. La. Nov. 21, 2006) (citing *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997)). The petitioner argues that he did not learn of the alleged plea offer until the April 2014 evidentiary hearing, thus excusing the procedural default under the doctrine of cause and prejudice or rendering it erroneously applied. However, the evidence cited by the petitioner is clearly not evidence of a plea offer to begin with. Instead, it is part of a trial memorandum prepared by a member of the defense team, advising the defense attorney of the weaknesses of the case and recommending that he therefore "try to plea the defendant to a lesser charge." Doc. 4, pp. 9–11; *see* doc. 15, att. 26, p. 114 (trial memorandum excerpt); doc. 15, att. 26, p. 43 (description of trial memorandum from evidentiary hearing). At the evidentiary hearing the petitioner's former attorney only testified that he had written to the district attorney requesting that a plea bargain be offered, not that any offer was extended. *Id.* at 42. Therefore this newly discovered evidence is not what the petitioner alleges it to be and cannot excuse his untimeliness in raising the claim or the state courts' decision not to review it.

---

[7] Because the petitioner's second application for post-conviction relief was deemed untimely under state law, it was not properly filed and therefore did not provide any additional tolling. *Wardlaw v. Cain*, 541 F.3d 275, 277–79 (5th Cir. 2008).

## C. Substantive Analysis

### 1. Ineffective assistance of counsel

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict. *Id.* at 2064. The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 1065). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S.Ct. at 2055–56. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2056. In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (quoting *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011)).

"Both of [Strickland's] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761

F.3d 561, 566–67 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 1735, 191 L. Ed. 2d 706 (2015). However, we will also examine whether the cumulative effect of any prejudice found could satisfy *Strickland. E.g.*, *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009).

### a. Failure to procure witnesses

The petitioner first alleges that trial counsel, Peter John, was ineffective for failing to procure the attendance of witnesses he later described as crucial to the defense. This claim centers on three uncalled witnesses: DNA expert Ronald Acton, investigator Virginia Castel-Lovell, and former FBI profiler Patricia Kirby.

John moved to enroll as defense counsel on February 15, 2007, two months before the trial date. Doc. 15, att. 8, p. 23. He filed a motion to continue on April 17, 2007, the day trial began. *Id.* at 50–52. There he stated that the presence of a DNA expert would be "essential to the defense of this matter" and that "the defense expert is unavailable to testify at the trial as presently set." *Id.* at 50. An attached letter from Dr. Ronald Acton indicated that he (Acton) could not appear because he was "out of town Monday and Tuesday and possibly testifying in another trial on Wednesday." *Id.* at 53. The motion was denied in open court. *Id.* at 52.

Castel-Lovell, who had been the initial investigator in the case, was subpoenaed by both the state and the defense. *See Tolliver*, 11 So.3d at 602 n. 5. At trial, after she had been called by the state and extensively cross-examined twice by the defense, she asked, "Do I leave now?" and the trial judge responded, "Yes, ma'am." Doc. 15, att. 11, p. 82. The following week, during the defense's case, John filed a motion to recess the trial. Doc. 15, att. 16, p. 17. At a sidebar, John stated that Castel-Lovell "for some reason, is back in New York . . . and we're trying to reach

her."[8] *Id.* The court denied the motion and the trial continued. *Id.* at 19. After confirming that Castel-Lovell had left the state and could not readily travel back, John moved for a mistrial or recess. *Id.* at 98–100. The court chastised John, telling him that it "assumed you would be doing your job and calling your witnesses and making them know when they had to appear. But it seems like you're relying upon the Court to take care of your witnesses for you." Doc. 15, att. 17, p. 32. It then took a recess to contact Castel-Lovell by telephone, after which conversation it noted:

> But she did wait around [for the remainder of the week]. Said she made her phone numbers available. She said everybody acted to her as if she was done. . . . So, you know, she is available to be here if you can call and make arrangements for her. She said if we fax her a subpoena, she can be here. So, what is your pleasure?

*Id.* at 33. John replied that she was a "critical witness" and that his office would make efforts to accommodate her return as soon as possible. *Id.* He also indicated that he would use Castel-Lovell's testimony to point out inconsistencies in the testimony of another witness, Joseph Delhomme, who was the original suspect in the case. Doc. 15, att. 18, p. 1; *see* note 1 *supra*. However, John's clerk stated under oath that she was unsuccessful in her attempts to contact Castel-Lovell after that point. Doc. 15, att. 18, p. 30.

Finally, the defense announced its intention to introduce testimony from Patricia Kirby, a former FBI profiler, as an expert witness in the case. Doc. 15, att. 16, pp. 11–13. The state then moved to determine the admissibility of Kirby's testimony. *Id.* at 13–14. In response to the court's question of whether Kirby would come willingly,[9] John replied that Kirby was "more than happy to come and testify, actually." *Id.* at 15. At the end of the penultimate day of trial, Monday, April

---

[8] John also claimed that the trial judge had asked whether Castel-Lovell was to be released and that John had replied, "No, I'm going to call her back." Doc. 15, att. 16, p. 20. However, as the respondent points out, the record contains no evidence of this statement.

[9] John had attempted to subpoena Kirby and then been told that she was outside of the court's subpoena power as an out of state resident. Doc. 15, att. 16, pp. 11–12.

23, 2007, John stated on two occasions that Kirby was scheduled to arrive "tomorrow afternoon." Doc. 15, att. 18, pp. 17, 24. However, he then admitted outside of the presence of the jury that he had called Kirby the previous evening and told her "not to waste her time" because he believed she would not be allowed to testify.[10] *Id.* at 39. Accordingly, the defense rested without testimony from any of these three witnesses. *See id.* at 41–45.

John's failure to call these three witnesses was raised as one of the petitioner's ineffective assistance claims on post-conviction relief and explored at the evidentiary hearing on that application. *See* doc. 15, att. 26, pp. 1–69. At this hearing John testified that he had consulted extensively with Acton on the DNA evidence involved in the case and that Acton had provided a written report. *Id.* at 8–13. He stated that, based on this consultation and report, he determined that Acton's testimony would have actually been harmful to the defense, though Acton continued to prove useful as a consulting expert and John would have desired his presence at trial for that reason. *Id.* at 13–16. When questioned about his argument that a continuance was necessary because Acton's presence at trial was "essential" to the defense, John admitted that his interest was actually in obtaining more time for general preparation rather than securing Acton's presence in particular. *Id.* at 21–22. John did not have specific recollections relating to Castel-Lovell's testimony. *Id.* at 23–24, 42–43. With respect to Kirby, however, he stated:

> [T]hat witness made a profile . . . that didn't fit this case and that would not help us in this case in the way that you're trying to say that that would help us. So, it wouldn't even have changed the outcome. It would have been cumulative at best.

*Id.* at 29. He also noted that he had enrolled as counsel for the defendant just two months before the trial date, at which point the court felt the case "was going on for years too long." *Id.* at 28.

---

[10] John's misrepresentations to the court on this subject led the court to convene contempt proceedings and sentence John to 24 hours in jail. Doc. 15, att. 19, pp. 7–8.

The petitioner fails to demonstrate how the testimony of any of these witnesses would have aided his case. John's representations at trial are too vague and unsupported to establish prejudice, especially in light of his retreat from these assertions at the evidentiary hearing. It is clear from John's account in the evidentiary hearing, juxtaposed against his unconvincing assertions at trial, that he embellished the importance of the prospective witnesses in order to gain more time. Therefore the petitioner cannot show that inability to obtain the testimony of these witnesses was deficient performance, much less prejudicial, and so has not satisfied either one of *Strickland*'s prongs.

### b. *Failure to secure expert testimony*

The petitioner next complains that John was ineffective for failing to secure expert testimony. He hypothesizes, based on the suspect profile produced by Kirby before DNA evidence led to the petitioner, that the perpetrator was a white male. Doc. 1, att. 1, pp. 16–17. He alleges that the true perpetrator might have found rags containing the petitioner's DNA outside of the victim's home and moved them inside the home in order to frame the petitioner. *Id.* at 17–18. He also challenges the nature of the victim's injuries, the absence of semen in her vagina, and the fact that "the spermatozoa discovered were all dead." *Id.* at 18. However, he provides no citations or expert opinions to make these contentions in any way supportive of his claim of innocence.

At the evidentiary hearing John described his preparation for dealing with the physical evidence at trial and his use of Acton as a consulting expert. Doc. 15, att. 26, pp. 12–16, 17–18, 31–34. He noted that Acton had found the DNA analysis to be reliably done, with a fingerprint also accounting for the petitioner's proximity to the crime scene.[11] *Id.* at 41–42. John's testimony presents a credible account of his investigations and strategic decisions regarding the physical

---

[11] At that hearing the petitioner also testified and contended that the report from Acton said that the DNA did not match the petitioner, though he admitted that he did not "fully" remember Acton's report. Doc. 15, att. 26, p. 51.

evidence. The petitioner's unsupported assertions are insufficient to show that John's performance was deficient either through the scope of his investigation or his decision not to consult with additional experts. Accordingly, the petitioner cannot satisfy either of *Strickland*'s prongs under this claim.

### c. *Failure to scientifically test samples of evidence*

Finally, the petitioner challenges John for failing to obtain independent testing of certain DNA samples. However, as John testified above, his consulting expert had already provided an opinion that the state laboratory's methodologies and findings were sound. *See* doc. 15, att. 26, pp. 41–42. A decision not to pursue additional testing would therefore be sound strategy, and so the petitioner cannot satisfy either one of *Strickland*'s prongs under this claim.

### d. *Cumulative effect*

Lastly, we analyze the above claims for any cumulative error. Because we have not found any instance of prejudice, however, the cumulative effect is also nil. Therefore the petitioner fails to show error to the state court's denial of his ineffective assistance claims and is not entitled to federal habeas relief based on any of the above allegations.

### 2. *Denial of Continuance and Recess*

The petitioner claims that the trial court erred by denying the defense's pretrial motion to continue in order to obtain Acton's testimony and its motions to recess the trial in order to obtain Castel-Lovell's and Kirby's testimony.

Under Louisiana law, a motion for continuance based on absence of a witness must state all of the following:

> (1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at trial.

> (2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred.
> (3) Facts showing due diligence used in an effort to procure attendance of the witness.

LA. C. CR. P. art. 709.[12]

The decision to grant a continuance or recess is within the discretion of the trial court. *Hicks v. Wainwright*, 633 F.2d 1146, 1148 (5th Cir. 1981); *State. Brown*, 677 So.2d 1057, 1065 (La. Ct. App. 1st Cir. 1996). When denial of a continuance forms the basis of a federal habeas claim, the petitioner must show not only that the trial court abused its discretion but also that the decision was "so arbitrary and fundamentally unfair that it violates constitutional principles of due process." *Hicks*, 633 F.2d at 1148.

In determining whether the trial court abused its discretion, the Fifth Circuit looks to the following nonexhaustive list of factors:

> the defense's diligence in interviewing and procuring the presence of the witnesses, the defense's estimation of the probability of procuring live testimony within a reasonable time, the specificity with which the defense is able to describe the expected testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony.

*Johnson v. Puckett*, 176 F.3d 809, 822 (5th Cir. 1999). We apply these factors to each of the challenged decisions.

### a. Continuance for Acton

As stated above, the defense filed a motion to continue in order to obtain Acton's testimony on the first day of trial. Doc. 15, att. 8, pp. 50–52. The motion was denied in open court. *Id.* at 52.

---

[12] A motion for recess is evaluated by the same standards under Louisiana law as a motion for a continuance. *See Galjour v. Cain*, 2015 WL 349317, \*5–\*6 (E.D. La. Jan. 26, 2015). We therefore apply the same analytical framework to the recesses sought for Kirby and Castel-Lovell as the continuance for Acton.

In arguing the motion, John stated that he had discovered the previous day that Acton could not testify in the trial as scheduled because he was out of town that day and possibly testifying in another trial the next day. Doc. 15, att. 5, pp. 97–98. Thus, John contended, "[t]here is a possibility that we'll get him here later this week, but there's a possibility not." *Id.* at 98. John contended, as referenced above, that Acton's testimony was critical to the defense's theory of the case and that the defense also needed more time to prepare and possibly seek another type of expert – a population geneticist – based on the information obtained from Acton. *Id.* at 98. The state opposed the motion, arguing in relevant part that Acton had only established that he was not available for the first two days of trial, which would not preclude him from testifying when the defense put on its case. Doc. 15, att. 6, pp. 1–2. The court agreed, remarking that the matter had already been continued five times before and that it was therefore unwilling to delay the matter any further. *Id.* at 2–3.

The above showing set out a weak case for continuing the trial. John did not describe with specificity how the testimony of Acton and/or the population geneticist would support the defense's theory of the case. He did not even show that Acton was unavailable to testify in the trial as it was currently set. Therefore the petitioner cannot show that the trial court abused its discretion in denying the motion, and so demonstrates no error to the state court's ruling on this portion of the claim.

### b. Recess for Castel-Lovell and Kirby

Based on the circumstances described under the ineffective assistance claim, John filed a Motion to Recess Trial on April 23, 2007, seeking to stay proceedings until the following morning at 9:00 am in order to obtain the testimony of Virginia Castel-Lovell and Patricia Kirby. Doc. 15, att. 8, p. 63. The trial court denied the motion. *Id.* at 64.

Much of the argument pertaining to Castel-Lovell was centered on the manner in which she had come to believe she was released from her subpoena, as described above. *See* doc. 15, att. 16, pp. 98–100; doc. 15, att. 17, pp. 27–30. As we have noted, Castel was extensively examined and cross-examined when she appeared as a witness for the state. Doc. 15, att. 10, pp. 21–100; doc. 15, att. 11, pp. 1–82. In urging his motion, John argued that Castel-Lovell could be used to rebut the testimony of another witness, Joseph Delhomme. Doc. 15, att. 18, p. 1. However, as we noted above, his assertions were vague and unsupported. Furthermore, John's office was unable to establish contact with Castel-Lovell on April 23 in order to determine when she might return. *Id.* at 30.

Additionally, although John indicated that he wanted Kirby to testify as to a profile she had developed of the suspect before DNA evidence led to the petitioner, he did not establish that she would be available to testify if the recess were granted. *See* doc. 15, att. 16, pp. 11–16. As shown above, John admitted that he had told Kirby and told her not to fly down to Louisiana for the last day of trial because he believed that she would not be allowed to testify. Doc. 15, att. 18, p. 39. Accordingly, it was not an abuse of discretion to deny any motion to recess where the movant failed to establish the materiality of one witness's testimony and that either witness would be available at the time to which he sought to defer the trial.

Because the petitioner has not demonstrated that either denial was an abuse of discretion, he cannot show that the trial court's actions under this claim rise to the level of a constitutional violation. Accordingly, he shows no error to the state court's ruling and no right to federal habeas relief.

### 3. *Autopsy report*

The petitioner also claims that the trial court erred in allowing the prosecutor to present inadmissible hearsay, thereby violating his rights under the Confrontation Clause of the Sixth Amendment.

The Confrontation Clause, made applicable to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI; *Pointer v. Texas*, 85 S.Ct. 1065, 1067–68 (1965). "If one were to read this language literally, it would require, on objection, the exclusion of any statement made by a declarant not present at trial. This approach has been rejected, though, as unintended and too extreme." *Fratta v. Quarterman*, 536 F.3d 485, 499 (5th Cir. 2008) (quotations and citations omitted). Instead, the court looks to criteria set out in *Crawford v. Washington*, 124 S.Ct. 1354 (2004) to determine whether the admission of the statements violates the Confrontation Clause. *See Brown v. Epps*, 686 F.3d 281, 285–86 (5th Cir. 2012). A Confrontation Clause violation only entitles the petitioner to habeas relief when the error was sufficiently prejudicial. *Hughes v. Quarterman*, 530 F.3d 336, 345 (5th Cir. 2008). This occurs only where the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 113 S.Ct. 1710, 1714 (1993) (quoting *Kotteakos v. United States*, 66 S.Ct. 1239, 1253 (1946)).

The petitioner's complaint centers on the autopsy report prepared in 1985 by Dr. Karuna Kukreja, who did not testify at trial. A summary of the autopsy report was introduced as State's Exhibit #42 at trial, during the testimony of state's expert witness Dr. Cameron Snyder, a forensic pathologist. Doc. 15, att. 12, p. 24. Snyder stated that he had reviewed this report and agreed with Kukreja's conclusions. *Id.* at 25. No objection was offered to the exhibit or the statement.

Even if we were to assume that the court erred in admitting the exhibit or that trial counsel rendered deficient performance for failing to object, petitioner still does not show any harm flowing from the putative error. Testimony based on the autopsy report was used to establish the injuries suffered by the victim and her cause of death. *See id.* at 29–37. However, the state's exhibits included photographs showing the crime scene, the victim's body, and her injuries. *Id.* at 12–13. Additionally, the defense made no challenge to the DNA evidence against the petitioner. Accordingly, the autopsy report and Snyder's summary of its findings could not be said to have influenced the verdict in any substantial manner. The petitioner therefore shows no error to the state court's ruling and no right to federal habeas relief under this claim.

### 4. *Release of Castel-Lovell from subpoena*

Finally, the petitioner alleges that the trial court erred in releasing Castel-Lovell from her subpoena.

The Compulsory Process Clause of the Sixth Amendment grants a defendant the right to offer testimony of favorable witnesses and to compel their attendance at trial. U.S. CONST. amend. VI. Thus the essence of this claim is that the trial court denied the petitioner his Sixth Amendment right to compulsory process when it released Castel-Lovell from the subpoena. In order to prevail, the petitioner therefore must show that the uncalled witness's testimony would have been both material and favorable to the defense. *Janecka v. Cockrell*, 301 F.3d 316, 326 (5th Cir. 2002) (citing *United States v. Valenzuela-Bernal*, 102 S.Ct. 3440 (1982)).

Here the petitioner states that "[t]he testimony of all these witnesses mentioned in this writ application was very helpful to [his] case." Doc. 1, att. 1, pp. 26–27. He also muses, "Had Mr. Tolliver been able to present their testimony to the jury, perhaps the jury would have found it

unbelievable and convicted him anyway – but of course we will never know."[13] *Id.* at 27. These assertions fall far short of showing materiality and favorability of Castel-Lovell's testimony. Additionally, as we noted above, Castel-Lovell had already been extensively cross-examined by the defense. John's assertion at trial that Castel-Lovell's testimony could be used to rebut that of another witness is too vague to show prejudice under this standard. Accordingly, assuming *arguendo* that fault does lie with the court rather than petitioner's attorney for releasing Castel-Lovell, the petitioner has not set out the prejudice necessary to show a constitutional violation. He is therefore not entitled to federal habeas relief under this claim.

## IV.
### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

---

[13] The petitioner's reference to more than one witness is confusing, as this claim is clearly based on the release of Castel-Lovell from her subpoena and not the defense's ability to call any other witness. *See* doc. 1, att. 1, p. 26.

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Chambers this 8th day of November, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE